UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FLORENCE E. PARISI | : |
| | : |
| v. | : C.A. No. 08-61A |
| | : |
| MICHAEL J. ASTRUE, Commissioner | : |
| Social Security Administration | : |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on February 21, 2008 seeking to reverse the decision of the Commissioner.  On October 10, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 9).  On December 23, 2008, the Commissioner filed a Motion for Order Affirming the Decision of the Commissioner.  (Document No. 11).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for Order Affirming the Decision of the Commission (Document No. 11) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 9) be GRANTED and the case remanded for further administrative procedures.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on July 14, 2004, (Tr. 13) alleging disability as of August 27, 2003 due to a status-post broken right ankle, back and knee conditions, high blood pressure, possible heart problems and depression/anxiety. (Tr. 30, 34, 71, 73, 227-228). Plaintiff was insured for DIB through December 31, 2007. (Tr. 13). The applications were denied initially (Tr. 34-37, 203) and on reconsideration. (Tr. 30-32, 205-207). Plaintiff filed a request for an administrative hearing. (Tr. 29). On December 4, 2006, a hearing was held before Administrative Law Judge Martha H. Bower (the "ALJ") at which Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert ("VE") appeared and testified. (Tr. 213-241).

On December 18, 2006, the ALJ issued a decision unfavorable to Plaintiff. (Tr. 10-20). The Appeals Council denied Plaintiff's request for review on December 21, 2007. (Tr. 2-8). A timely appeal was then filed with this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff does not contest the ALJ's findings regarding her physical impairments but does contest the ALJ's evaluation of her depression/anxiety. In particular, Plaintiff argues that the ALJ improperly found that her mental impairments were not severe and that she had no mental limitations that were supported by the record.

The Commissioner disputes Plaintiff's claims and asserts that substantial evidence is present in the record to support the ALJ's decision to deny benefits.

## III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

-4-

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

### IV.     DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

#### A.     Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was fifty-six years old at the time of the ALJ hearing, completed high school and a two-year preschool teacher certification program and worked in the relevant past as a preschool teacher, CNA/home health aide, child care worker, shuttle bus driver, part-time intake clerk and part-time house cleaner/companion.  (Tr. 53, 60, 216-218, 227).

Plaintiff does not contest the ALJ's physical residual functional capacity ("RFC") findings. She contests her mental findings.  Accordingly, the following summary is limited to the record evidence of Plaintiff's mental impairments.

In March 2005, Plaintiff was treated for her mental impairments at The Kent Center.  (Tr. 123-133).  She reported that since her physical impairments began in August 2003, she had been experiencing "episodes of tearfulness, stress [and] anxiety...[and] racing thoughts."  (Tr. 123, 129). She was noted to have "some distractibility – can't focus when 'too many things going.'"  (Tr. 124). She was diagnosed with adjustment disorder with mixed anxiety and depression.  (Tr. 128).  Her global assessment of functioning ("GAF") was rated at 55 or moderate symptoms.  (Tr. 130).  In

April 2005, Plaintiff was noted to be sad, depressed and anxious. (Tr. 183-184). By the end of April, Plaintiff reported some improvement in her outlook and affect. (Tr. 187). For the next several months, the treatment records noted problems with transportation resulting in missed appointments, and Plaintiff's treatment ended in September 2005. (Tr. 189-200). Improvement was noted due to Plaintiff's part-time work and increased social contacts. (Tr. 200). The Kent Center's discharge summary noted Plaintiff's diagnosis to be adjustment disorder, mixed emotions, and her GAF was rated at 70 or mild symptoms. (Tr. 170).

On June 1, 2005, at the request of the state agency, Plaintiff was evaluated by psychologist Louis Turchetta, Ed. D. (Tr. 149-152) Dr. Turchetta diagnosed adjustment disorder with mixed anxiety and depressed mood and rated Plaintiff's GAF at 50. (Tr. 151). Dr. Turchetta noted that Plaintiff complained of "a great amount of stress due to financial difficulties. She is unhappy that she is not able to return to work as a result of her physical limitations. She easily becomes sad and has difficulty maintaining her concentration." (Tr. 150). She further reported poor concentration and difficulty completing tasks. (Tr. 152).

On April 28, 2005, Dr. Susan Diaz-Killenberg, a state agency reviewing psychologist, completed a psychiatric review technique form. (Ex. 8F). Dr. Diaz-Killenberg stated that Plaintiff has an affective disorder (adjustment disorder with depression) and an anxiety-related disorder (adjustment disorder with anxiety) with mild limitations in activities of daily living and social functioning and a moderate impairment in concentration, persistence and pace. (Tr. 145). On June 17, 2005, after the consultative evaluation noted above, Dr. Diaz-Killenberg completed a mental RFC assessment form in which she said Plaintiff had moderate impairments in her abilities to understand, remember and carry out detailed instructions, to maintain attention and concentration

for extended periods, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace and to respond appropriately to changes in the work setting. (Tr. 153-154). Dr. Diaz-Killenberg opined that Plaintiff would be "unreliable" in her ability to carry out detailed tasks or sustain concentration for extended periods. (Tr. 155). She also believed that Plaintiff would be slow to respond to change due to "distractibility." Id.

### A. The ALJ's Step 2 Rejection of Plaintiff's Depression as a "Non-severe" Impairment is Not Supported by the Record

The ALJ generally decided this case adverse to Plaintiff at Step 4. She found Plaintiff's ankle, knee and back ailments to be "severe" impairments which limited Plaintiff to an RFC for light work with other postural and environmental limitations. (Tr. 17). Based on this RFC and testimony from the VE, the ALJ denied disability benefits because she found Plaintiff capable of performing her past relevant work as a CNA/home health aide, preschool teacher and shuttle bus driver. (Tr. 19).

Plaintiff contests the ALJ's evaluation of the medical evidence relating to her mental health and her failure to incorporate any resulting nonexertional limitations in her RFC. The ALJ determined at Step 2 that Plaintiff's depression was a "non-severe" impairment within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment is not "severe" when it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. "The step two inquiry is a de minimis screening device used to dispose of ground-

less or frivolous claims." Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)); see also Lisi v. Apfel, 111 F. Supp. 2d 103, 110 (D.R.I. 2000).

In evaluating Plaintiff's depression, the ALJ did not address all of the mental health medical evidence of record. The ALJ only discussed Plaintiff's treatment records from The Kent Center (Exs. 7F and 13F) and a single psychological evaluation of Dr. Turchetta (Ex. 9F). The ALJ did not address either the psychiatric review technique form (Ex. 8F) or a mental RFC assessment (Ex. 10F) which were included in the record. Although an ME (Dr. Fuchs) testified at the hearing, he was an orthopedic specialist and testified only briefly as to Plaintiff's depression and anxiety. (Tr. 235). The ALJ asked the ME to opine on Plaintiff's functional limitations "strictly from an objective basis and not taking into account the psychiatric issues." Id. (emphasis added). The ME responded that there would be no limitations presumably not taking Plaintiff's psychiatric issues into account as instructed by the ALJ. (Tr. 236).

In her decision, the ALJ summarizes Plaintiff's treatment records from The Kent Center (Exs. 7F and 13F) which span a nine-month period from January to September 2005. (Tr. 16). The ALJ observes that the records showed improvement in Plaintiff's condition. The ALJ also highlights the fact that Plaintiff's GAF at discharge was 70. (Tr. 16-17). The problem with the ALJ's reasoning is that she failed to expressly consider the reports of state agency psychologist Dr. Susan Diaz-Killenberg. (See Exs. 8F and 10F). On April 28, 2005, Dr. Diaz-Killenberg found sufficient evidence in the medical records to support the diagnoses of adjustment disorder with depression and adjustment disorder with anxiety. (Tr. 138, 140). She found Plaintiff to be mildly restricted in

activities of daily living and maintaining social functioning, and moderately restricted in maintaining concentration, persistence and pace. (Tr. 145).

Significantly, Dr. Diaz-Killenberg found the records from The Kent Center to be insufficient evidence to determine severity. (Tr. 166). In particular, she declined to rely on The Kent Center's evaluation of March 3, 2005 (Tr. 123-129) because the evaluator, a counselor, was not "an accepted source." (Tr. 167). Dr. Diaz-Killenberg stated that "we either need her evaluation co-signed by an M.D./Ph.D. or we need psychiatric CE." (Tr. 167). Dr. Turchetta's consultative psychological examination followed on June 1, 2005, and he assessed adjustment disorder with mixed anxiety and depressed mood, and a GAF of 50. (Ex. 9F). With the benefit of this CE, Dr. Diaz-Killenberg completed a mental RFC assessment on June 17, 2005 and found Plaintiff to be moderately limited in several areas such as the ability to understand, remember and carry out detailed instructions, and maintain attention and concentration for extended periods. (Tr. 153-154). She concluded that Plaintiff would be "unreliable in ability to carry out detailed tasks or sustain concentration for extended periods" and "slow to respond to change due to distractibility." (Tr. 155).

The ALJ must have given significantly reduced weight to Dr. Diaz-Killenberg's RFC assessment but does not explain her basis for doing so, or even mention the assessment in her decision for that matter. The ALJ also fails to address Dr. Turchetta's June 2005 assessment of a GAF of 50 or moderate symptoms. The only GAF she specifically mentions is a 70 GAF noted in a Kent Center discharge summary dated September 27, 2005. (Tr. 170). However, the 70 GAF assessment came from the same counselor (see Tr. 199-200) who was previously described as "not an accepted source" by Dr. Diaz-Killenberg. (Tr. 167). In other words, the ALJ was willing to

accept and rely on the same counselor's opinion that the state agency psychologist rejected as an unacceptable source.

Although the ALJ disposed of Plaintiff's depression/anxiety at Step 2, she commented briefly on the mental health evidence in her RFC assessment. (Tr. 19). The ALJ conceded that "[s]tate agency psychiatric and psychological consultants found that [Plaintiff's] mental impairment was more than 'non-severe'" but found no "significant functional loss" based on her review of a "more complete record." (Tr. 19). However, a close review of the administrative record reveals that the "more complete record" consisted of only three additional appointments, (Tr. 189-190, 191-192, 197-200), and those were with a counselor identified by the state agency psychologist as not an accepted source. The ME also reviewed these additional records (Tr. 234) but was not questioned by the ALJ about their significance and, inexplicably, the ALJ directed the ME to opine on functional limitations without taking the psychiatric issues into account. (Tr. 235-236).

The Court agrees that the evidence of a disabling mental impairment is not overwhelming. However, given the limited scope of the mental health records, the ALJ should have directly addressed all of the evidence and explained the weight given to such evidence and the reasons thereafter. This is particularly so when the ALJ disposed of Plaintiff's depression/anxiety in a Step 2 finding. Furthermore, the Step 2 rejection of Plaintiff's depression negated the ALJ's obligation to do a more thorough assessment of Plaintiff's mental impairments pursuant to the "special technique" mandated by 20 C.F.R. § 416.920a. Although it is the ALJ's (not this Court's) province to weigh conflicting evidence, Rodriguez-Pagan v. Sec'y of HHS, 819 F.2d 1, 4 (1st Cir. 1987) ("it is the [ALJ's] province to resolve conflicts in the medical evidence"), the ALJ should have expressly

evaluated all of the mental health evidence in this particular case and placed her reasoning on the record before disposing of Plaintiff's depression/anxiety claim at Step 2.

The Commissioner has adopted a "slight abnormality" standard which requires that "[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's...mental ability(ies) to perform basic work activities." SSR 85-28 at p. 3. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." Id. The ALJ's failure to address all of the mental health evidence (particularly the evidence favorable to Plaintiff) leaves the Court to speculate as to the ALJ's assessment of such evidence and the extent to which it might support a Step 2 severity finding. Thus, the Court concludes that remand is appropriate for the ALJ to fully articulate her evaluation of the mental health evidence not specifically addressed and her application of the Step 2 standard to such evidence. The ALJ may also develop the record further, if warranted in her judgment to fully evaluate Plaintiff's claimed mental impairments.

## CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 11) be DENIED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 9) be GRANTED. Final judgment shall enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND

United States Magistrate Judge
January 28, 2009